## SAM POWELL v. THE STATE.

1. CRIMINAL LAW.  *Homicide.  Parental correction, causing death.*
   A parent cannot deliberately inflict such punishment on his child of tender years as will likely produce death and yet escape criminal responsibility under cover of authority to correct in moderation.

2. SAME.  *Cruel punishment.  Death of child.  Intent.*
   On a trial for murder, a father, guilty of the cruel and immoderate beating of his child eight years of age, which results in death, is not entitled to an instruction that the jury, before convicting the accused of murder, must believe that at the time of the chastisement he had in mind a wilful and deliberate purpose to kill.

3. SAME.  *Instructions as to intent.*
   In such case the defendant cannot complain of the modification of his instructions on the subject of intent, if the charges as modified instruct the jury that, although the accused may have killed the deceased without legal excuse, before convicting him of murder they must "further believe from the evidence, beyond any reasonable doubt, that the correction of the deceased was excessive, cruel, unusual, evidently dangerous, and likely to kill or produce great bodily harm."

4. INDICTMENT FOR MURDER. *Instruction as to manslaughter.*

    If in such case the defendant obtains an instruction to the effect that, although the deceased may have been killed without legal excuse, yet, if no deadly weapon was used and the chastisement was not evidently dangerous and likely to kill or produce great bodily harm, the jury should find the defendant guilty of only manslaughter, the law of manslaughter is fairly presented to the jury.

5. SAME. *Child of tender years.* *Motive immaterial, when.*

    On the trial of a father who, in administering punishment, cruelly beats his child of tender years to death, it is proper for the court to refuse to instruct the jury that the absence of motive to kill is a circumstance favorable to the accused.

FROM the circuit court of Lauderdale county.

HON. S. H. TERRAL, Judge.

Appellant, a negro, was convicted of the murder of his child, who died from the effects of punishment inflicted by the accused. The circumstances and manner of the infliction of the punishment are stated in the opinion of the court. Finding that the injuries were fatal the accused fled, but was arrested in another state and brought back for trial. The court appointed counsel to conduct his defense. On the trial he testified that he did not intend to kill or seriously injure the child; that he inflicted the punishment at the instance of his wife and sister (the former being the child's stepmother), who claimed that the child had told lies on them; that they urged him on during the whipping. The evidence showed that he became greatly angered as the whipping progressed, and finally desisted only when forced to do so by the interference of a neighbor.

The following instructions were given on behalf of the accused:—

" 1. If the jury should find the defendant guilty of murder as charged in the indictment, they may fix the punishment at imprisonment in the penitentiary for life.

" 2. If, after considering all the evidence in the case and the instructions of the court, there is a probability that the grade of the defendant's crime is manslaughter and not murder, then the jury are instructed by the court that there is a reasonable doubt whether

the defendant's crime for whipping his child to death is murder or manslaughter, and they should find him guilty of manslaughter.

" 3. If, after reading the instructions of the court and carefully considering all the evidence in the case, the jury are not satisfied to a moral certainty and beyond all reasonable doubt which offense, murder or manslaughter, the defendant is guilty of, the jury are instructed by the court to resolve such doubt in favor of the defendant and find him guilty of the lesser offense, manslaughter, and not murder.

" 5. The court instructs the jury that in all criminal cases, before conviction can be had, the jury must be satisfied beyond a reasonable doubt that the defendant is guilty in a manner and form as charged in the indictment.

" 6. The father has the legal right to whip his child to enforce obedience to the father's authority, and will not be punished therefor unless he exceeds the bounds of due moderation in the manner, the instrument used, or the degree of the correction, and if he exceeds the bounds of due moderation he will be adjudged guilty of murder or manslaughter, according to the circumstances.

" 8. If there is any fact or circumstance in the case, proof of which is necessary to enable the jury to determine whether the defendant is guilty of murder or manslaughter, and the evidence touching such fact or circumstance is not so convincing as clearly to prove the same, the jury should find the defendant guilty of manslaughter and not murder."

Some of the instructions for the state were objected to, and some of those asked by the defendant were modified, and the defendant excepted. The action of the court below in regard to the instructions sufficiently appears in the opinion of the court.

After conviction, defendant moved for a new trial. Motion overruled ; sentence of death ; defendant appeals.

*W. N. Ethridge*, for appellant.

1. The court erred in so instructing the jury as to prevent a conviction of manslaughter only. The second instruction of the state should not have been given. No deadly weapon was used and

there was no former grudge ; hence, there was no malice and the defendant was not guilty of murder.

2. Defendant was entitled to all the probabilities that the offense was manslaughter instead of murder. The sixteenth instruction for defendant, which was refused, was copied from Sackett's Instructions to Juries, p. 519. See, also, 2 Whar. Cr. L., §§ 933, 942.

3. A juror has no idea of involuntary manslaughter, committed in the exercise of a lawful act in an unlawful manner. Therefore instruction fifteen for defendant, defining involuntary manslaughter should have been given. There was no such provocation as would reduce the killing to manslaughter on account of the heat of passion, and for this reason it was especially important for the accused to have involuntary manslaughter defined to the jury.

4. It is submitted that the court erred in refusing to give instruction thirteen on behalf of the defendant as to conflicts in the evidence. There were such conflicts and the jury should have been told that the defendant was entitled to the benefit of any doubt created by them.

*T. M. Miller*, attorney-general, for the state.

1. The evidence fully sustains the verdict. If murder cannot be predicated of the facts shown, a parent cannot murder his child so long as he pretends that he was inflicting chastisement only.

2. No fault can be found with the state's instructions. Malice may be presumed from circumstances of barbarity indicating a depraved heart.

If parents, masters and others having authority to correct, exceed the bounds of moderation, either in the measure of punishment or the instrument used, and death results, it will be murder or manslaughter, according to the circumstances. 2 Roscoe's Cr. Ev., p. 769.

It was proper to instruct the jury that if, considering the manner and degree of punishment and the age and strength of the child, the correction was evidently dangerous and was likely to kill or produce great bodily harm and was deliberate, the defendant was guilty of murder. Code 1880, § 2875.

As to cruel treatment indicating malice, see 1 Russell on Crimes, 751 ; Wharton on Homicide, 129.

3. The instructions for defendant were as liberal as could be asked, and the trial was fair.   The jury were told that if they had a doubt whether the killing was murder or manslaughter, to find the latter.   If it be true that manslaughter was not fully defined and with sufficient clearness, it was the fault of the defendant.

They were fully instructed as to the right of a parent to enforce obedience by punishment, and were told to give the defendant the benefit of every reasonable doubt.

It is submitted that there is no error in the record.

WOODS, C. J., delivered the opinion of the court.

The appellant was convicted of the murder of one Frank Powell, and received sentence of death thereupon.

The undisputed evidence discloses that the deceased was the infant son of the accused, and that he was only of the age of eight years ; that for some trifling misconduct of the child, the accused stripped the little creature naked, threw it on the floor, and savagely beat it from head to foot, for about half an hour, with a piece of rubber pipe, and that death resulted therefrom within a few moments.   It is in proof that the child, at the close of the beating, exclaimed : " I am dying," and that the accused retorted : " Die, God damn you," and instantly endeavored to dash the deceased against the brick surface of the chimney.   It is also in evidence that, during this protracted and merciless beating, the accused flung the little creature heavily upon the floor, and that he stamped it with his feet.   This brief recital of the facts attending the commission of this offense will be sufficient to show that no error was committed in its rulings by the court below.

The second instruction given for the state declared that if the child died from immoderate correction administered by the parent, and the jury believed from the evidence that " such immoderate correction was intentionally inflicted without just cause or excuse, and, considering the manner, the means, and the degree of inflicting, the age and strength of the child being considered, that such correction

was evidently dangerous and likely to kill or produce great bodily harm, the accused is guilty of murder." On the facts of this case, the instruction was proper, for it can never be held that a parent may deliberately inflict such punishment on his child as will likely produce death—as was clearly the case here—and yet escape criminal responsibility under cover of parental authority to correct in moderation. Indeed, there seems little occasion for consideration of this parental right of correction, in the sombre light of the facts of this case. The other instructions for the state are in the usual stereotyped form, and were correct statements of elementary principles.

Exception is taken, also, to the action of the court on defendant's instructions. The fourth instruction, as, in fact, all the modified instructions, was made to charge the jury that if the accused killed deceased without legal excuse or justifiable cause, yet, before convicting of murder, the jury must "further believe from the evidence, beyond any reasonable doubt, that the correction of the deceased was excessive, cruel, unusual, evidently dangerous, and likely to kill or produce great bodily harm." The instruction is in harmony with the second instruction given for the state, and is correct.

The seventh instruction for defendant, as modified by the court, is in these words, viz: "The court instructs the jury that if they believe from the evidence, beyond a reasonable doubt, that the defendant killed the deceased without any legal excuse or justification, still if the jury further believe from the evidence that the strap used by the defendant in chastising the deceased was not a deadly weapon, and that the chastisement was not evidently dangerous and likely to kill or produce great bodily harm, then the jury should find the defendant guilty of only manslaughter." This instruction fairly presents the law of manslaughter, as applicable to the facts of the case, and was quite as favorable to the accused as the court was warranted in making it. The other modified instructions of the defendant substantially repeat the rule announced in the seventh instruction just referred to, and meet our approval.

It remains only to notice the exception to the action of the court in refusing to give the defendant's tenth instruction, by which it was

---

---

sought to charge the jury "that if a motive on the part of the defendant to commit the crime has not been shown, then the jury ought to consider that as a circumstance favorable to the accused." On the uncontroverted facts of the case, any inquiry as to motive would have been vain and aimless. In certain cases, as, for example, where circumstances point to the accused as the person likely to have committed the offense, the examination of the question of motive would be necessary and proper. But, here, it was undenied that, with pitiless savagery, the father beat to death, without cause, his own helpless child, and that he concluded his shocking barbarity by crying into the ears of his expiring victim: "Die, God damn you." Surely any search after motive, under these appalling circumstances, would have been judicial child's play.

*Affirmed.*

